**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Kristine M. Cribb,<br><br>Plaintiff,<br><br>v.<br><br>McCall Farms, LLC.,<br><br>Defendant. | 4:26-cv-5851-SAC-MGB<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff Kristine M. Cribb ("Plaintiff"), complaining of Defendant McCall Farms, Inc. ("Defendant" or "McCall Farms"), alleges and says:

## NATURE OF THE ACTION

1. This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq. (the "ADA"), regarding Defendant's discrimination against Plaintiff because of her disability and Defendant's retaliation against her for requesting and taking medical leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.

2. After more than eleven years of employment, Plaintiff, a Quality Manager, took approved medical leave for a mental-health condition. Her physician released her to return to work. Defendant assured Plaintiff that her job was not in jeopardy and instructed her to report on June 29, 2026. When Plaintiff reported ready to work, Defendant did not return her to her position. Instead, Defendant presented her with a severance agreement and terminated her employment.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is a citizen and resident of Florence County, South Carolina.

4. Defendant McCall Farms, Inc. is a corporation organized under the laws of the State of South Carolina with its principal place of business at 6615 South Irby Street, Effingham, South Carolina 29541.

5. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(4) because Plaintiff's claims arise under the laws of the United States, namely the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. The ADA incorporates the powers, remedies, and procedures of 42 U.S.C. § 2000e-5. 42 U.S.C. § 12117(a) This Court has jurisdiction over Plaintiff's claims under 29 U.S.C § 2617(a)(2), which authorizes an action against any employer "in any Federal or State court of competent jurisdiction."

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant operates in, and employed Plaintiff in, Effingham, Florence County, South Carolina, and the unlawful employment practices alleged below were committed there.

7. At all relevant times, Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) because it was engaged in an industry affecting commerce and employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

8. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 12111(4) and a "qualified individual" within the meaning of 42 U.S.C. § 12111(8).

9. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received the Notice of Right to Sue. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice.

10. Plaintiff has satisfied all administrative prerequisites and conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

11. Defendant is a food-processing company that processes and packages vegetable produce for retail at its facility in Effingham, South Carolina.

12. Plaintiff first worked at Defendant's facility in or about December 2013 through a temporary staffing service. Defendant hired Plaintiff as a full-time employee on or about January 25, 2015, as a machine operator.

13. Through hard work and demonstrated ability, Plaintiff was promoted and ultimately became Quality Manager (Canning & Freezer), a position she held at the time of her termination.

14. As Quality Manager, Plaintiff was responsible for, among other things, overseeing canning quality, freezer quality, and food-safety operations; preparing for Sage Quality Food ("SQF") audits; managing corrective and preventative actions ("CAPAs"); managing customer complaint logs; product disposition compliance review and training; SOP revisions; specifications; participating in interviews; and oversite of canning shifts. Plaintiff reported to QA Director, Tony Middleton ("Middleton").

15. Plaintiff was never disciplined during her employment with Defendant and her most recent performance evaluation, in or about March 2026, was favorable.

16. At all relevant times, Plaintiff was qualified for her position and performed her job satisfactorily.

17. Plaintiff has a physical or mental impairment that substantially limits one or more major life activities within the meaning of 42 U.S.C. § 12102(1)(A) and (2).

18. Plaintiff also has a record of such an impairment, and Defendant regarded her as having such an impairment, when it placed her on leave and then terminated her.

19. Plaintiff has been under the care of her physician for approximately five years.

20. In or about December 2025, Plaintiff experienced a pregnancy loss. Plaintiff did not take leave and continued to work full duty. Plaintiff experienced symptoms such as depression, tearfulness, difficulty concentrating, and emotional exhaustion which worsened over the following months.

21. Throughout her employment, Plaintiff took her responsibility to apply Defendant's written food-safety standards and standard operating procedures ("SOPs") seriously and consistently, and she raised concerns when she believed they were not being followed.

22. In or about March 2026, Plaintiff presented a co-owner of Defendant with data regarding customer complaints.

23. On or about (date) Plaintiff attended a meeting with Director of Quality Assurance, Tony Middleton ("Middleton"), Food Manufacturing Assistant Manager, Hannah Kendrick ("Kendrick") and Freezer Manager, Terry Weaver ("Weaver") regarding responsibility for customer complaints. Words were exchanged, and Mr. Middleton ended the meeting.

24. Two to three days later, Plaintiff was called to a meeting with Human Resources, including Andy Garris ("Garris"), Mr. Middleton, and the plant manager. Defendant directed that Plaintiff and Ms. Kendrick improve their "communication." Defendant directed Plaintiff to meet with an outside consultant, Jeff Daniels, Plaintiff agreed.

25. Beginning in early April 2026, Plaintiff met with Mr. Daniels, who told Plaintiff she needed to "get out on the floor more" and that her supervisor had said she was not a "team player." Plaintiff met with him again on or about April 27, 2026.

26. In or about late April or early May 2026, during an SQF audit, Plaintiff met with Human Resources Director, Terry Martin ("Martin"), who relayed that Plaintiff was not viewed as a team player. He told her that Plaintiff would have to "make concessions" and, if the owners wanted something done, "we are going to do it." Plaintiff stated that she was not comfortable with that approach.

27. Plaintiff did not receive any written discipline, warning, or performance improvement plan at any time.

28. On or about May 7, 2026, Plaintiff met with Lee Freeman, a consultant with StratPro who previously provided leadership coaching to Defendant's management and employees. Mr. Freeman told Plaintiff that her job was in jeopardy.

29. During that meeting, Plaintiff provided Mr. Freeman with a written summary of concerns that described, among other things, that she had become "mentally exhausted," "emotionally disconnected," and had "lost motivation," that she constantly replayed workplace events after hours, and that she had considered resigning. Mr. Freeman asked Plaintiff about her pregnancy loss.

30 The same day, Plaintiff met with Human Resources Director Terry Martin and provided him with the same written summary. Mr. Martin asked questions about the document. Defendant was therefore on notice, no later than May 7, 2026, that Plaintiff was suffering from a serious health condition affecting her mental health and ability to function.

31. That afternoon, Plaintiff attended a follow-up appointment with her physician, Dr. Reynolds, at MUSC Health West Florence Family Medicine. Dr. Reynolds documented Plaintiff's work-related stress, depressive symptoms, which she had since December 2025, and attention-deficit symptoms. Dr. Reynolds issued a work note dated May 7, 2026 and wrote Plaintiff out of work.

32. Plaintiff notified Defendant that her physician had written her out of work and provided her physician's documentation. Defendant required Plaintiff to use Family and Medical Leave Act ("FMLA") leave. Plaintiff's physician completed FMLA paperwork, and Defendant approved FMLA leave beginning May 8, 2026.

33. Defendant sent Plaintiff correspondence, addressing the FMLA leave, including requirements that Plaintiff use accrued paid leave and pay certain benefit premiums during her leave. Plaintiff's leave was otherwise unpaid.

34 Defendant's Human Resources personnel knew throughout Plaintiff's leave that it was for mental health condition.

35. On or about June 8, 2026, Plaintiff was reevaluated by Dr. Reynolds, who released Plaintiff to return to work on June 22, 2026. Plaintiff provided the release to Defendant, including Mr. Martin and Mr. Middleton.

36. On or about June 19, 2026, Defendant's Human Resources Manager, Andy Garris ("Garris"), contacted Plaintiff and asked whether she would return to work on June 22, 2026. Plaintiff told Mr. Garris that she was physically ready to return but was still processing emotionally.

37. Plaintiff asked Mr. Garris and Mr. Martin, who were both on the call, whether her job was in jeopardy. Defendant assured Plaintiff that her job was not in jeopardy.

38. Defendant told Plaintiff to take an additional week off, with pay, and to report to Defendant's facility on June 29, 2026, at 9:00 a.m. to meet about her return.

39. On June 29, 2026, Plaintiff reported at 9:00 a.m., ready, willing, and able to resume her duties as Quality Manager.

40. Plaintiff was met by Mr. Garris and Mr. Martin. After asking how she was doing, they told Plaintiff that Defendant had "worked out a deal" for her. When Plaintiff began to cry, Defendant's representatives told her, in substance, that they did not "have a price" for her.

41. Defendant did not discuss with Plaintiff her return to her position or to any position, did not ask whether she needed any accommodation or restrictions, and did not engage in any interactive process regarding her return to work.

42. Defendant presented Plaintiff with a proposed Severance and Release Agreement in exchange for a general release of all claims, including claims under the ADA and the FMLA, a covenant not to sue, and confidentiality and non-disparagement obligations. The Agreement recites that Plaintiff's employment terminated effective June 29, 2026.

43. On June 30, 2026, Defendant called Plaintiff to another meeting with Mr. Martin, Mr. Garris, and Defendant's CEO, Will Areklett ("Areklett"). Mr. Areklett told Plaintiff, in substance, that the decision resulted from "unforeseen circumstances" and thanked her for her dedication. Plaintiff asked whether Defendant had read the issues she had raised with Human Resources.

44. On or about July 1, 2026, Defendant held a third meeting with Plaintiff. At that meeting, Defendant pressured Plaintiff to sign the Severance Agreement, characterizing the separation as "mutual."

45. At each of the meetings, Plaintiff expressed confusion about why she was not being returned to her position. While she expressed some concerns about Defendants' business practices, her doctor had cleared her to return to work and Defendant had an obligation to return Plaintiff to her position.

46. Defendant did not identify any performance or conduct reason for ending Plaintiff's employment.

47. Defendant terminated Plaintiff's employment on the first day she was scheduled to return from medical leave, seven days after her physician's release date and ten days after Defendant assured her that her job was not in jeopardy.

48. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, loss of professional reputation, and other damages.

## FIRST CAUSE OF ACTION
### Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12112

49. Plaintiff realleges and incorporates by reference all preceding paragraphs.

50. At all relevant times, Plaintiff was an individual with a disability within the meaning of 42 U.S.C. § 12102, as a person with an actual disability, a record of a disability, and/or who was regarded as having a disability.

51. At all relevant times, Plaintiff was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of her position, and had been released by her physician to return to work.

52. Defendant knew of Plaintiff's impairment and her need for medical leave, as set forth above.

53. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of her employment, and discharged her, because of her disability, her record of disability, and/or Defendant's perception of her disability, and because of absences and limitations resulting from her disability, in violation of 42 U.S.C. § 12112(a).

54. Defendant also failed to engage in a good-faith interactive process with Plaintiff regarding her return to work and failed to return Plaintiff to her position at the conclusion of approved medical leave, in violation of 42 U.S.C. § 12112(b)(5)(A) and 29 C.F.R. § 1630.2(o)(3).

55. Defendant's stated reason for ending Plaintiff's employment, if any, is a pretext for disability discrimination. Among other things, Plaintiff had no discipline or performance issues; Defendant assured her ten days earlier that her job was not in jeopardy; Defendant terminated her on the day she returned from medical leave without discussing her return; and Defendant offered her money to sign a release rather than allowing her to resume her duties.

56. Defendant acted intentionally, willfully, and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to compensatory and punitive damages.

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above and is entitled to the relief requested below.

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of the ADA, 42 U.S.C. § 12203**

58. Plaintiff realleges and incorporates by reference all preceding paragraphs.

59. The ADA prohibits an employer from discriminating against any individual because the individual has opposed any act or practice made unlawful by the ADA or has made a charge, testified, assisted, or participated in any manner in an ADA investigation, proceeding, or hearing. 42 U.S.C. § 12203(a). Requesting and using leave as a reasonable accommodation for a disability is activity protected by the ADA.

60. Plaintiff engaged in protected activity when she disclosed her mental-health condition to Defendant, requested and took medical leave on the advice of her physician beginning May 7–8, 2026, provided medical documentation supporting her leave and release to return to work, and asked Defendant whether her job was in jeopardy as she prepared to return from leave. 66. Defendant knew of Plaintiff's protected activity.

61. Defendant took materially adverse action against Plaintiff by terminating her employment on June 29, 2026, the day she was scheduled to return from medical leave, and by pressuring her to sign a release of her claims.

62. A causal connection exists between Plaintiff's protected activity and her termination, as shown by, among other things, the close temporal proximity between her leave and release and her termination; Defendant's assurance that her job was not in

jeopardy, followed by termination upon her return; the absence of any performance or disciplinary basis; and Defendant's attribution of the decision to "unforeseen circumstances."

63. Defendant's conduct would dissuade a reasonable employee from requesting or taking medical leave for a disability.

64. Defendant acted intentionally, willfully, and with malice or reckless indifference to Plaintiff's federally protected rights.

65. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above and is entitled to the relief requested below.

**THIRD CAUSE OF ACTION**
**(Retaliation in Violation of the FMLA, 29 U.S.C. § 2601 et seq.)**

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.

67. Plaintiff suffered a "serious health condition" under 29 U.S.C. § 2611(11), and Defendant approved her leave as FMLA-protected leave.

68. Plaintiff was entitled to be restored to her position or an equivalent position upon return from FMLA leave. 29 U.S.C. § 2614(a)(1). Defendant denied that right by terminating her on the day she reported to return, thereby interfering with the exercise of her FMLA rights in violation of 29 U.S.C. § 2615(a)(1), and terminated her for taking FMLA-protected leave in violation of 29 U.S.C. § 2615(a)(2). Defendant's violation was willful, and Plaintiff is entitled to lost compensation, interest, liquidated damages, equitable relief, and attorneys' fees. 29 U.S.C. § 2617(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a) A declaration that Defendant's acts and practices complained of herein violated the ADA;

b) An order reinstating Plaintiff to her position as Quality Manager with full seniority and benefits or, in the alternative, an award of front pay in lieu of reinstatement;

c) Back pay and lost benefits in an amount to be proven at trial, with prejudgment interest;

d) Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and injury to professional reputation, to the extent permitted by 42 U.S.C. § 1981a;

e) Punitive damages in an amount sufficient to punish Defendant and deter similar conduct, as permitted by 42 U.S.C. § 1981a;

f) An injunction prohibiting Defendant from further discrimination and retaliation in violation of the ADA;

g) Reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 12205 and 42 U.S.C. § 12117(a);

h) Liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii);

i) Pre-judgment and post-judgment interest as allowed by law; and

j) Such other and further relief as the Court deems just and proper.

(Signature Block on Following Page)

Respectfully submitted,

BURNETTE SHUTT & MCDANIEL, PA

By: s/Janet E. Rhodes
Janet E. Rhodes, Esquire (FED Bar # 10521)
Post Office Box 1929
Columbia, South Carolina 29202
Telephone: 803-904-7933
Facsimile: 803-904-7910
Email: Jrhodes@burnetteshutt.law

**Attorney for Plaintiff**

November 17, 2026

Columbia South Carolina